UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>Robert L. de Feyter</u>

  v.               Civil No. 10-cv-358-JL
                   Opinion No. 2011 DNH 049
<u>Federal Aviation Administration</u>

## **OPINION & ORDER**

The question in this case is whether a private citizen can compel the Federal Aviation Administration ("FAA") to impose civil penalties on third parties who have violated FAA regulations. Plaintiff Robert L. de Feyter, who lives near the Apte Heliport in North Conway, New Hampshire, has been complaining to the FAA for years that the heliport is being used for flights at dangerously low altitudes and at night. The FAA, which approved the heliport in 2000 for daytime flights only, investigated the complaints, withdrew its approval, and recommended in 2005 that the heliport be closed. Nevertheless, de Feyter alleges that the heliport is still being used in the same dangerous manner. He has repeatedly asked the FAA to impose civil penalties on the heliport's owner and pilots under the FAA Act, 49 U.S.C. § 46301, but the FAA has declined to do so, noting that its heliport "determinations are only advisory" to state and local governments. 14 C.F.R. § 157.7. This <u>pro</u> <u>se</u> action is de Feyter's attempt to compel the FAA to impose such penalties.

The FAA has moved to dismiss the case for lack of subject-matter jurisdiction, see Fed. R. Civ. P. 12(b)(1), arguing that (1) there is no private right of action to enforce the FAA Act or related regulations; (2) its decision not to impose civil penalties is committed to agency discretion and therefore not reviewable under the FAA Act, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq., or by petition for a writ of mandamus; and (3) even if that decision were reviewable, only the United States Court of Appeals for the First Circuit or the D.C. Circuit would have jurisdiction to review it, see 49 U.S.C. § 46110. After hearing oral argument, and for essentially those reasons, this court grants the motion to dismiss. De Feyter's request that the case be transferred instead to one of those circuit courts is denied, as transfer is not "in the interest of justice." 28 U.S.C. § 1631; see also Britell v. United States, 318 F.3d 70, 75 (1st Cir. 2003) (where a case clearly lacks merit, "it is in the interest of justice to dismiss it rather than to keep it on life support").

## I. Applicable legal standard

"Facial attacks on a complaint" under Rule 12(b)(1) "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." Torres-Negron v. J & N Records, LLC, 504 F.3d 151, 162 (1st Cir.

2

2007). In making that determination, the court "must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010). Where, as here, the plaintiff is proceeding pro se, the complaint must be construed even more generously, "held to less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976); accord Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004). "If the well-pleaded facts, evaluated in that generous manner, do not support a finding of . . . subject-matter jurisdiction," then the court has no authority to review the case, and it must be dismissed. Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009).

As the FAA acknowledges, see document no. 12 at 2 n.2, some of its arguments could be viewed not as jurisdictional challenges, but as arguments that de Feyter has failed to state a claim for relief. Under such circumstances, the court may analyze the arguments under Rule 12(b)(6) of the Federal Rules of Civil Procedure, rather than Rule 12(b)(1). See, e.g., Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41, 46 n.6 (1st Cir. 2005); Arroyo-Torres v. Ponce Fed. Bank, 918 F.2d 276, 280 (1st Cir. 1990) (court is "not bound by the label"); 5B Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1347, at 51 (3d ed. 2004) ("the substance of a

party's defense or objection rather than its form will control the district court's treatment of a Rule 12(b) motion"). The Rule 12(b)(6) analysis is similar to the Rule 12(b)(1) analysis: construing the complaint in the same generous manner, the court must determine whether the plaintiff has made factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## II. **Background**

In 1997 or 1998, Wylie Apte submitted a "Notice of Landing Area" to the FAA, proposing to establish a heliport on his property in North Conway, New Hampshire. See 14 C.F.R. §§ 157.3 and 157.5 (requiring any "person who intends to . . . establish a new airport or activate an airport," including a heliport, to notify the FAA "90 days in advance"). Apte had been operating the heliport for more than a decade without FAA approval. After receiving that notice, the FAA conducted an aeronautical study, ultimately issuing a "letter of determination" in early 2000 that gave "conditional" approval to the heliport. See id. § 157.7 (providing that the FAA, after conducting an aeronautical study, may issue an "advisory" determination of either "no objection," "objectionable," or a "conditional determination [that] will identify the objectionable aspects of a project or action and

4

specify the conditions which must be met and sustained to preclude an objectionable determination"). One of the conditions was that the heliport be used only for daytime flights.

In the years that followed, the FAA received numerous complaints of nighttime flights at the heliport, including from de Feyter, who lives nearby. In 2005, after conducting an investigation and a hearing, the FAA informed de Feyter that it had concluded "that revocation of the determination letters to both the Apte Heliport [and another nearby heliport] is warranted." Shortly thereafter, the FAA issued a letter to Apte "terminating approval" of the heliport "because the FAA has received information indicating that conditions stated in our determination letter are not being complied with. Specifically, that helicopter operations are being conducted at night when night operations are not authorized." See id. § 157.7(c) (indicating that an FAA determination may be "revised, or terminated . . . based on new facts"). According to de Feyter, the FAA not only received those reports, but confirmed them through its investigation and a hearing.[1] The letter to Apte

---

[1] The FAA has submitted its own version of events, see document no. 12-1, which differs from de Feyter's in a number of respects. For example, the FAA denies that it made any finding of a regulatory violation or any "formal determination[] that operations at the Apte Heliport fell outside the conditions" stated in its determination letter. Id. at 5-6. For purposes of analyzing the FAA's motion to dismiss, however, this court assumes that de Feyter's account is the correct one. See Part I, supra.

"recommend[ed] that all operations at the heliport be ceased immediately."

Notwithstanding that recommendation, the Apte Heliport has continued operating for the past six years and, according to de Feyter, still conducts nighttime flights, as well as flights at dangerously low altitudes over populated areas. Apte has not submitted a further "Notice of Landing Area" seeking to reinstate the FAA's approval of the heliport, under either the same or different conditions. Believing that the lack of further notice, coupled with the continued use of the heliport for unauthorized flights, violates FDA regulations (specifically, the notice requirements of 14 C.F.R. §§ 157.3 and 157.5),[2] de Feyter has repeatedly requested that the FAA impose civil penalties against the heliport's owner and pilots under the FAA Act, 49 U.S.C. § 46301. But the FAA has refused to do so, noting that its heliport "determinations are only advisory" to state and local governments. 14 C.F.R. § 157.7. The FAA informed de Feyter by letter in 2010 that "the evidence we found does not warrant

---

[2] It is debatable whether those FAA regulations actually require further notice in this situation, especially after the FAA has already conducted a hearing on the matter. For purposes of analyzing the FAA's motion to dismiss, however, this court assumes arguendo that further notice is required and that the Apte Heliport's owner and pilots have violated the regulations.

taking FAA action" and that "[u]nless you raise new issues to us, we view this matter as closed."

After receiving that letter, de Feyter brought this pro se action against the FAA, requesting that this court "direct the FAA back to its mission" by ordering it to "apply civil penalty(s) against the operator and pilots using the terminated Apte Heliport."[3] The complaint itself does not specify which claim(s) de Feyter is asserting; it merely invokes the FAA Act and regulations and then requests the relief quoted above. Recognizing that pro se complaints must be construed liberally, the FAA assumed, for purposes of its motion to dismiss, that de Feyter was asserting (1) a private cause of action to enforce the FAA Act and regulations; (2) a petition for direct review of agency action under the FAA Act and/or the APA; and (3) a petition for writ of mandamus under 28 U.S.C. §§ 1361 and 1651. Those are the claims typically asserted by a private citizen seeking relief of this sort. De Feyter essentially embraced them in his objection, sur-reply, and oral argument. Accordingly, this court will treat them as his claims and analyze each one in turn.

---

[3]The complaint also requested an award of damages for de Feyter's costs in bringing this action, but he has since indicated that "has no objection" to the dismissal of that request, which the FAA argued was barred by sovereign immunity. See document no. 10, at 6.

### III. Analysis

#### A. *Private cause of action*

First, the FAA argues that there is no private cause of action to enforce the FAA Act and related regulations, and that this court therefore lacks subject-matter jurisdiction over that claim. The First Circuit has indeed ruled that "Congress, in crafting the [FAA] Act, intended public, not private, enforcement," and that "neither the Act nor the regulations create implied private rights of action." Bonano v. E. Caribbean Airline Corp., 365 F.3d 81, 86 (1st Cir. 2004) (identifying "a long list of other courts that have concluded" the same); see also Buck v. Am. Airlines, Inc., 476 F.3d 29, 34 (1st Cir. 2007) (reiterating that "for the purpose of implying private rights of action, the FAA Act . . . is barren soil"). So it is clear that de Feyter cannot bring such a claim. He has not attempted to argue otherwise, or to distinguish this case from those binding precedents.

That does not, however, deprive this court of subject-matter jurisdiction over the claim. "It has long been recognized that where a plaintiff asserts that a private right of action is implied from federal law, federal courts do have the requisite subject matter jurisdiction to determine whether such a federal remedy exists." Arroyo-Torres, 918 F.2d at 280 (quotation omitted); see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,

535 U.S. 635, 642-43 (2002) (explaining that "the absence of a valid . . . [private] cause of action does not implicate subject-matter jurisdiction," so long as the plaintiff's assertion of that cause of action is not "wholly insubstantial and frivolous"). Nevertheless, because no private cause of action exists, de Feyter's claim must be dismissed on the merits under Rule 12(b)(6). See, e.g., Arroyo-Torres, 918 F.2d at 280 (affirming Rule 12(b)(1) dismissal under Rule 12(b)(6) in similar situation).

## B.  *Direct review of agency action*

Next, the FAA argues that its decision not to impose civil penalties is discretionary and therefore not subject to direct review under the FAA Act and/or the APA. Both of those statutes authorize a person adversely affected by final agency action to seek direct review of it. See 49 U.S.C. § 46110 (FAA Act--authorizing "a person disclosing a substantial interest in an [FAA] order" to seek review of that order); 5 U.S.C. §§ 702 and 704 (APA--authorizing "[a] person . . . adversely affected or aggrieved by agency action" including a "failure to act," to seek review where permitted by statute, such as the FAA Act, or where "there is no other adequate remedy in a court"); Penobscot Air Servs., Ltd. v. FAA, 164 F.3d 713, 718 (1st Cir. 1999) (explaining that, where the FAA Act is silent, the APA controls).

But neither statute permits review "to the extent that . . . [the challenged] agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2) (APA); see also Steenholdt v. FAA, 314 F.3d 633, 638-39 (D.C. Cir. 2003) (construing the FAA Act to have the same limitation); Adams v. FAA, 1 F.3d 955, 956 (9th Cir. 1993) (same).

It is well established that "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)," because "such a decision has traditionally been 'committed to agency discretion,'" and "Congress [in] enacting the APA did not intend to alter that tradition." Heckler v. Chaney, 470 U.S. 821, 832 (1985); see also Taylor v. U.S. Dep't of Labor, 440 F.3d 1, 9-10 (1st Cir. 2005). The presumption "may be rebutted," however, "where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers," such as "by setting substantive priorities, or by otherwise circumscribing an agency's power to discriminate among issues or cases it will pursue." Chaney, 470 U.S. at 833. In analyzing whether the presumption has been rebutted, courts generally "consider both [1] the nature of the administrative action at issue and [2] the language and structure of the statute." Drake v. FAA, 291 F.3d 59, 70 (D.C. Cir. 2002).

The administrative action at issue here is the FAA's decision not to impose civil penalties on the Apte Heliport's owner and pilots for violating FAA regulations (specifically, the notice requirements set forth in 14 C.F.R. §§ 157.3 and 157.5). As the Supreme Court noted in Chaney, such a decision "often involves a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," including "whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all." 470 U.S. at 831. Agencies "generally cannot act against each technical violation" of their regulations, so there must be a "proper ordering of . . . priorities," and the "agency is far better equipped than the courts" to do it. Id. at 831-32. As a result, the decision not to impose civil penalties is generally the type of action committed to agency discretion.

The FAA Act's language and structure confirm that the specific penalty decision at issue here is indeed committed to agency discretion. Under the Act, "[a] person is liable to the United States Government for a civil penalty of not more than [the statutory maximum] for violating . . . a regulation prescribed" under chapter 401, which includes the notice

11

regulations that de Feyter alleges were violated. 49 U.S.C. § 46301(a)(1). In a section entitled "Administrative imposition of penalties," the Act provides that, after notice and an administrative hearing, the "FAA <u>may</u> impose a civil penalty for a violation of chapter 401 . . . or a regulation prescribed" thereunder. <u>Id.</u> § 46301(d)(2) (emphasis added). If the penalty exceeds a certain amount, the Act prohibits the FAA from imposing it administratively, <u>see</u> 49 U.S.C. § 46301(d)(4), but provides that the FAA "<u>may</u>" bring a civil action seeking to impose it, <u>id.</u> §§ 46106 and 46305 (emphasis added). Of course, "the term 'may' usually indicates that something is permissive, not mandatory," <u>Liberty Mut. Ins. Co. v. Greenwich Ins. Co.</u>, 417 F.3d 193, 197 (1st Cir. 2005), and thus suggests that the FAA need not impose or seek penalties for every violation.[4]

Nothing in the FAA Act supplies a "meaningful standard . . . against which to judge the agency's exercise of discretion" in

---

[4] In contrast, the Act states that the FAA "<u>shall</u>" investigate "reasonable" complaints of regulatory violations (unless it "is of the opinion that the complaint does not state facts that warrant an investigation or action") and "<u>shall</u> issue an order to compel compliance" if it "finds in an investigation . . . that a person is violating this part." 49 U.S.C. § 46101(a) (emphases added). Neither of those provisions is at issue here, because de Feyter is seeking to compel the imposition of civil penalties, not merely an investigation (which, he alleges, has already occurred) or an order of compliance (he views the FAA's 2005 letter to Apte as a standing order to close the heliport, <u>see</u> document no. 13, at 4). It is worth noting, though, that the D.C. Circuit has ruled that the Act "gives the FAA virtually unbridled discretion" even over the decision whether to investigate. <u>Drake</u>, 291 F.3d at 72.

deciding which regulatory violations to penalize and which not to penalize. Taylor, 440 F.3d at 9. Nor does anything in the FAA's regulations. See 14 C.F.R. § 13.11 (stating that the FAA may dispose of a case without enforcement action even where "it is determined that a violation . . . of the FAA Act . . . or regulation issued under it" has occurred). De Feyter argues that the FAA's written Compliance and Enforcement Program supplies such a standard. See FAA Order No. 2150.3B (Oct. 1, 2007). But that program does not purport to cabin agency discretion; to the contrary, it states that the "FAA's discretion in these areas is absolute and presumed to be immune from review," citing Chaney as authority. Id. at 7-3.[5] So the presumption that the FAA's decision not to impose civil penalties is committed to agency discretion--and thus "immune from judicial review"--has not been rebutted, at least by the sources that the parties have

---

[5] At oral argument, de Feyter also argued for the first time that the instructions to the FAA's "Notice of Landing Area" form cabin FAA discretion by warning applicants that "the FAA Act . . . provides that any person who violates a rule, regulation or order . . . shall be subject to a civil penalty not to exceed $1,000 for each violation." (Emphasis added). "This court generally will not consider theories raised for the first time at oral argument, out of fairness to adverse parties and the court." Prince v. Metro. Life Ins. Co., 2010 DNH 046, 22 n.11. That is particularly true where, as here, they rely on materials outside the record. Even if properly raised, moreover, de Feyter's argument would fail because the instructions merely purport to paraphrase the FAA Act's civil penalty provision, which speaks for itself. Again, the FAA Act states that the FAA "may" impose civil penalties, not that it "shall."

identified and that this court has been able to find.  Chaney, 470 U.S. at 832.

Like the absence of a private cause of action, see Part III.A, supra, the fact "[t]hat a plaintiff complains about an action that is committed to agency discretion by law does not mean that his case is not a 'civil action[] arising under the Constitution, laws, or treaties of the United States,' 28 U.S.C. § 1331," nor does it "mean, therefore, the court lacks subject matter jurisdiction" over it.  Oryszak v. Sullivan, 576 F.3d 522, 526 (D.C. Cir. 2009) (citing Baker v. Carr, 369 U.S. 186, 198 (1962)).  It is an issue of justiciability, not jurisdiction.  See id.  Nevertheless, because the FAA's decision is committed to agency discretion and therefore not reviewable under the FAA Act or the APA, de Feyter's petition for direct review must be dismissed on the merits under Rule 12(b)(6).  See Part I, supra; Arroyo-Torres, 918 F.2d at 280.

C.  *Exclusive jurisdiction of circuit courts*

Even if the FAA's decision were reviewable, the FAA argues that only the United States Courts of Appeals for the First Circuit or the D.C. Circuit would have jurisdiction to review it, thus precluding review in this court.  To the extent (if any) that de Feyter is seeking review of an FAA order, that is true.  The FAA Act provides that "a person disclosing a substantial

14

interest in an order issued by" the FAA "may apply for review of the order by filing a petition for review in the United States Court of Appeals for the D.C. Circuit or in the court of appeals of the United States for the circuit in which the person resides," 49 U.S.C. § 46110(a), and further states that the petitioned court has "exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the [FAA] to conduct further proceedings." Id. § 46110(c) (emphasis added); see also Aviators for Safe & Fairer Regulation, Inc. v. FAA, 221 F.3d 222, 225 (1st Cir. 2000).

It is debatable, though, whether the FAA action that de Feyter is challenging qualifies as an "order" under the FAA Act, as opposed to some other form of agency action covered only by the APA. See id. (noting that the term "order" has been "read expansively" to encompass even informal letters, "so long as the agency's position is definitive and clearly expressed"); compare Ass'n of Citizens to Protect & Pres. The Env't of the Oak Grove Cmty. v. FAA, 287 Fed. Appx. 764, 766 (11th Cir. 2008) (unpublished) (suggesting that § 46110(a) also "applies when an agency's failure to act results in a final order never being issued, thereby indefinitely depriving the court of appeals of jurisdiction"), with Capozzi v. Dep't of Transp., 135 F. Supp. 2d 87, 95 (D. Mass. 2001) (distinguishing, in dicta, between "orders" and "agency inaction"). Indeed, even the FAA seems

15

unable to make up its mind on that issue. <u>Compare</u> document no. 7-1, at 12 (arguing that § 46110 applies), <u>with</u> document no. 12, at 5 (arguing that "there is no FAA order to have reviewed"). This court need not resolve that debate, because de Feyter's claim is not reviewable anyway for the reasons already discussed.[6]

### D. *Request for transfer*

To the extent (if any) that the circuit courts have exclusive jurisdiction, de Feyter requests that this court transfer the case to one of those courts under 28 U.S.C. § 1631, which provides:

> Whenever a civil action is filed in a court . . ., including a petition for review of administrative action, . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

---

[6]The FAA also argues that de Feyter's claim is not reviewable under the FAA Act because it was filed more than 60 days after any "order" was issued. <u>See</u> 49 U.S.C. 46110(a) (providing that the "petition must be filed not later than 60 days after the order is issued," unless "there are reasonable grounds" for any further delay). This court need not reach that issue either.

16

As construed by the First Circuit, that statute "furnishes a court that lacks jurisdiction over an action with a choice between transfer and dismissal.  That choice is subject to a rebuttable presumption in favor of the transfer alternative." Subsalve USA Corp. v. Watson Mfg., Inc., 462 F.3d 41, 43 (1st Cir. 2006).  "Since the term 'interest of justice' is vague, district courts have a good deal of discretion in deciding whether to transfer a case."  Phillips v. Seiter, 173 F.3d 609, 610 (7th Cir. 1999).

Where, as here, a case clearly lacks merit or would not be reviewable even in the transferee court, "it is in the interest of justice to dismiss it rather than to keep it on life support (with the inevitable result that the transferee court will pull the plug)."  Britell, 318 F.3d at 75; see also Phillips, 173 F.3d at 610 ("there is no reason to raise false hopes and waste judicial resources by transferring a case that is clearly doomed"); Charles v. Rice, 28 F.3d 1312, 1323 (1st Cir. 1994) (concluding that transfer "would be to no avail" where "the only tribunal arguably possessed of jurisdiction" had held that it lacked jurisdiction under such circumstances).  In keeping with that principle, this court denies de Feyter's request for transfer, concluding that transfer would be futile and hence would waste judicial resources without furthering the interest of justice.  Of course, this ruling does not prevent de Feyter from

filing a new petition with one of the circuit courts, if he wishes to do so.

### E.  *Mandamus claim*

Finally, the FAA argues that it cannot be compelled to impose civil penalties by writ of mandamus under 28 U.S.C. §§ 1361 and 1651, again because the decision not to impose such penalties is committed to agency discretion.  "Mandamus is regarded as an extraordinary writ reserved for special situations."  In re City of Fall River, 470 F.3d 30, 32 (1st Cir. 2006).  One of its "ordinary preconditions" is "that the agency or official have acted (or failed to act) in disregard of a clear legal duty."  Id.  To satisfy that standard, the duty must be "non-discretionary."  Eveland v. Dir. of CIA, 843 F.2d 46, 51 (1st Cir. 1988) (quoting Heckler v. Ringer, 466 U.S. 602, 616-17 (1984)).  Because the FAA's decision not to impose civil penalties is indeed discretionary, see Part III.B, supra, mandamus relief is unavailable in this case.  Once again, that does not mean that this court lacks subject-matter jurisdiction.  See 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.").  But it means that de Feyter's mandamus claim must be dismissed under Rule 12(b)(6) for

18

failure to state a claim.  See Part I, supra; Arroyo-Torres, 918 F.2d at 280.

## IV. Conclusion

For the reasons set forth above, the FAA's motion to dismiss[7] is GRANTED, under Rule 12(b)(6) rather than Rule 12(b)(1).  De Feyter's request for transfer to the First Circuit or D.C. Circuit[8] is DENIED.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  March 25, 2011

cc:  Robert L. de Feyter, pro se
     Gretchen Leah Witt, Esq.

---

[7] Document no. 7.

[8] Document no. 10, at 7-9.

19